**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON DOCKET**

| | |
|---|---|
| *In re BHG Data Security Litigation* | 6:22-cv-00150 |
| | CLASS ACTION |
| | JURY TRIAL DEMANDED |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Gary Lawson and Carla Smith ("Plaintiffs"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through their attorneys, bring this Consolidated Class Action Complaint against Defendants BHG XXXIV, LLC ("BHG XXXIV") and BHG Holdings, LLC, d/b/a Behavioral Health Group ("BHG Holdings") (together, "BHG") and complain and allege upon personal knowledge as to themselves and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiffs bring this class action against BHG for its failure to secure and safeguard their and approximately 197,507 other individuals' personally identifiable information ("PII") and personal health information ("PHI"), including name, Social Security number, driver's license or state identification number, financial account information, payment card information, passport, biometrics, health insurance information, and medical information.

2. BHG is a company that provides rehabilitation and other services to persons dealing with opioid addiction and their families. BHG XXXIV is a subsidiary of BHG Holdings. BHG XXXIV's principal office is located in Corbin, Kentucky. BHG Holdings has its principal place of business in Dallas, Texas.

3.      On or about December 5, 2021, unauthorized individuals gained access to BHG's network systems and accessed and acquired files from the system that contained the PII/PHI of Plaintiffs and Class members (the "Data Breach").

4.      BHG owed a duty to Plaintiffs and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII/PHI against unauthorized access and disclosure. BHG breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect its patients', former patients', employees', and former employees' PII/PHI from unauthorized access and disclosure.

5.      As a result of BHG's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiffs' and Class members' PII/PHI was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiffs bring this action on behalf of themselves and all persons whose PII/PHI was exposed as a result of the Data Breach, which BHG says it learned of on or about December 5, 2021, and first publicly acknowledged on or about July 27, 2022, over seven months after the breach was allegedly discovered.

6.      Plaintiffs, on behalf of themselves and all other Class members, assert claims for negligence, negligence per se, breach of fiduciary duty, breach of express contract, breach of implied contract, and unjust enrichment, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

**PARTIES**

7.      Plaintiff Gary Lawson is a Kentucky resident. From approximately 2017 to 2022, he obtained services from BHG. He received a letter from BHG dated July 27, 2022, notifying him

that files and folders containing his PII/PHI were removed from BHG's network in the Data Breach. Plaintiff Lawson would not have sought services from or provided his PII/PHI to BHG had he known that his information would not be adequately safeguarded by BHG.

8.    Plaintiff Carla Smith is a Kentucky resident. She was formerly employed by BHG and worked at BHG's Corbin, Kentucky location. She received a letter from BHG dated July 27, 2022, notifying her that files and folders containing her PII/PHI were removed from BHG's network in the Data Breach. Plaintiff Smith would not have sought employment from or provided her PII/PHI to BHG had she known that her information would not be adequately safeguarded by BHG.

9.    Defendant BHG XXXIV, LLC is a limited liability company formed in Kentucky. BHG XXXIV, LLC's principal place of business is the Corbin Treatment Center, which is located at 785 Cumberland Gap Parkway, Suite 3, Corbin, KY 40701. BHG XXXIV, LLC may be served through its registered agent: CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601. BHG Corbin's sole member is VCPHCS L.P., a limited partnership organized under the laws of Delaware with a principal place of business in Texas. VCPHCS L.P.'s sole limited partner is BHG Holdings, a limited liability company organized under the laws of Texas with a principal place of business in Texas.

10.    Defendant BHG Holdings, LLC is a limited liability company formed in Texas. BHG Holdings, LLC's principal place of business is 5001 Spring Valley Road, Suite 600E, Dallas, Texas 75244. BHG Holdings, LLC may be served through its registered agent: Rajinder Singh, 3023 E Hwy 80, Odessa, Texas 79761. BHG Holdings' sole member is TVG-BHG Intermediate Blocker Corp., a Delaware corporation with its primary place of business in Delaware.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from the citizenship of all of Defendant's members, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

12.     This Court has personal jurisdiction over BHG XXXIV because BHG XXXIV has its principal place of business in Kentucky.

13.     This Court has personal jurisdiction over BHG Holdings because BHG Holdings, LLC does business in this state and the causes of action arose as a result of BHG Holdings' business in the state.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because BHG XXXIV's principal place of business is in Corbin, Kentucky; BHG Holdings does business in this District through its subsidiary, BHG XXXIV; and a significant amount of the events leading to Plaintiffs' causes of action occurred in this District.

## FACTUAL ALLEGATIONS

### *Overview of BHG*

15.     BHG provides services to persons dealing with drug addiction. In some instances, BHG administers or prescribes medication to its patients and provides psychological therapy services.[1]

16.     In the regular course of its business, BHG collects and maintains the PII/PHI of its patients and its employees.

---

[1] *Patients and Families*, BEHAVIORAL HEALTH GROUP, https://www.bhgrecovery.com/patients-and-families (last accessed Mar. 30, 2023).

17.    BHG provides its patients with its Notice of Privacy Practices. The Notice of Privacy Practices states, "BHG is committed to fully complying with HIPAA and with the protection of your health information." See Exhibit A, Notice of Privacy Practices. The notice goes on to state, "We are required by law to maintain the privacy of your health information and provide you notice of our legal duties and privacy practices with respect to your health information. We will abide by the terms of this Notice."[2]

18.    Defendants represent on their website that they "take[s] great effort to protect patient confidentiality and privacy. Information that is provided will not be released to anyone outside of BHG without written consent unless there is an urgent situation that places you or someone you know in immediate danger. Only under those circumstances would limited information be released."[3]

19.    Plaintiffs and Class members are, or were, patients or employees of BHG and entrusted BHG with their PII/PHI.

### The Data Breach

20.    On or about December 5, 2021, an unauthorized individual, or unauthorized individuals, gained access to BHG's network systems and accessed and acquired certain files on BHG's computer systems.

21.    BHG did not begin to notify government agencies or the public about the Data Breach until over seven months after it occurred, on or about July 27, 2022. The notice that BHG posted to its website states that the information that the cybercriminal had access to includes the

---

[2] *Id.*
[3] *See Points to Remember*, BEHAVIORAL HEALTH GROUP,
https://www.bhgrecovery.com/hubfs/Community-Patients-Families-Resources-For-Families/Points%20to%20Remember.pdf (last accessed Mar. 30, 2023).

following PII/PHI: "full name, Social Security number, driver's license or state identification number, financial account information, payment card information, passport, biometrics, health insurance information and/or medical information including medical diagnosis and treatment, medication information, dates of service, and/or medical record number."[4]

22.     The information involved in the Data Breach is especially sensitive because of the nature of BHG's business, which is providing rehabilitation services to persons dealing with substance abuse. Because many Class members are in substance abuse recovery, many members of the putative Class are already particularly vulnerable.

23.     BHG's notice states that its investigation into the Data Breach revealed that on June 22, 2022, that files and folders containing PII/PHI related to Plaintiffs and Class members "may have been accessed or acquired."[5] Despite this, BHG still waited an additional month to tell its patients, former patients, employees, and former employees that the breach occurred.

### BHG Knew that Criminals Target PII/PHI

24.     At all relevant times, BHG knew, or should have known, that the PII/PHI that it collected was a target for malicious actors. Despite such knowledge, BHG failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiffs' and Class members' PII/PHI from cyber-attacks that BHG should have anticipated and guarded against.

25.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly

---

[4] *BHG Holdings, LLC dba Behavioral Health Group Provides Notice of Data Security Incident*, BEHAVIORAL HEALTH GROUP.
[5] *Id.*

visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[6]

26.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies.  They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[7]

27.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[8]

28.     This readily available and accessible information confirms that, prior to the Data Breach, Defendants knew or should have known that (i) ransomware actors were targeting healthcare companies such as Defendants, (ii) ransomware gangs were ferociously aggressive in their pursuit of big companies such as Defendants, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

---

[6] *High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations*, FBI (Oct. 2, 2019), https://www.ic3.gov/Media/Y2019/PSA191002 (last accessed Mar. 30, 2023).
[7] *Ransomware Mentioned in 1,000+ SEC Filings Over the Past Year*, ZDNet (Apr. 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed Mar. 30, 2023).
[8] *Ransomware Guide*, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last accessed Mar. 30, 2023).

29.     It is well known amongst companies that store sensitive personally identifying information that sensitive information—such as the Social Security numbers ("SSNs") and medical information stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[9]

30.     Cyber criminals seek out PHI at a greater rate than other sources of personal information. In a 2022 report, the healthcare compliance company Protenus found that there were 905 medical data breaches in 2021 with over 50 million patient records exposed.[10] This is an increase from the 758 medical data breaches which exposed approximately 40 million records that Protenus compiled in 2020.[11]

31.     PII/PHI is a valuable property right.[12] The value of PII/PHI as a commodity is measurable.[13] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory

---

[9] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1 (last accessed Mar. 30, 2023).

[10] PROTENUS, *2022 Breach Barometer*, PROTENUS, https://www.protenus.com/breach-barometer-report (last accessed Nov. 28, 2022).

[11] *Id*.

[12] *See* Marc van Lieshout, *The Value of Personal Data*, 457 INT'L FED'N FOR INFO. PROCESSING 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data (last accessed Mar. 30, 2023).

[13] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (April 28, 2014), http://www.medscape.com/viewarticle/824192 (last accessed Mar. 30, 2023).

frameworks."[14] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[15] It is so valuable to identity thieves that once PII/PHI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

32.     As a result of their real and significant value, identity thieves and other cyber criminals have openly posted credit card numbers, SSNs, PII/PHI, and other sensitive information directly on various Internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated and become more valuable to thieves and more damaging to victims.

33.     PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[16] A cybercriminal who steals a person's PHI can end up with as many as "seven to ten personal identifying characteristics of an individual."[17]

34.     All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses, SSNs, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each

---

[14] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en (last accessed Mar. 30, 2023).

[15] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/ (last accessed Mar. 30, 2023).

[16] *See* Andrew Steager, *What Happens to Stolen Healthcare Data*, HEALTHTECH MAGAZINE (Oct. 20, 2019), ("*What Happens to Stolen Healthcare Data*") (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals."), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (last accessed Mar. 30, 2023).

[17] *Id.*

on the black market.[18] According to a report released by the Federal Bureau of Investigation's ("FBI") Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen Social Security or credit card number.[19]

35.     Criminals can use stolen PII/PHI to extort a financial payment by "leveraging details specific to a disease or terminal illness."[20] Quoting Carbon Black's Chief Cybersecurity Officer, one recent article explained: "Traditional criminals understand the power of coercion and extortion . . . By having healthcare information—specifically, regarding a sexually transmitted disease or terminal illness—that information can be used to extort or coerce someone to do what you want them to do."[21]

36.     Consumers place a high value on the privacy of that data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[22]

---

[18] SC Staff, *Health Insurance Credentials Fetch High Prices in the Online Black Market*, SC MAG. (July 16, 2013), https://www.scmagazine.com/news/breach/health-insurance-credentials-fetch-high-prices-in-the-online-black-market (last accessed Mar. 30, 2023).

[19] Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain* (April 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf (last accessed Mar. 30, 2023).

[20] *What Happens to Stolen Healthcare Data*, *supra* n.16.

[21] *Id.*

[22] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1 (last accessed Mar. 30, 2023).

37.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

### *Theft of PII/PHI Has Grave and Lasting Consequences for Victims*

38.     Theft of PII/PHI is serious. The FTC warns consumers that identity thieves use PII/PHI to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[23]

39.     Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[24] According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[25]

---

[23] *See* Federal Trade Commission, *What to Know About Identity Theft*, FED. TRADE COMM'N CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Mar. 30, 2023).

[24] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. 12 C.F.R. § 1022.3(g).

[25] *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last accessed Mar. 30, 2023).

40.     With access to an individual's PII/PHI, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information. In addition, identity thieves may even give the victim's personal information to police during an arrest.[26]

41.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[27]

42.     Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

43.     Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[28]

---

[26] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, IDENTITYTHEFT.GOV, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Mar. 30, 2022).

[27] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RES. CTR. (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/ (last accessed Mar. 30, 2023).

[28] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/ (last accessed Mar. 30, 2023).

44.     Theft of PII is even more serious when it includes theft of PHI. Data breaches involving medical information "typically leave[] a trail of falsified information in medical records that can plague victims' medical and financial lives for years."[29] It "is also more difficult to detect, taking almost twice as long as normal identity theft."[30] In warning consumers on the dangers of medical identity theft, the FTC states that an identity thief may use PII/PHI "to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care."[31] The FTC also warns, "If the thief's health information is mixed with yours it could affect the medical care you're able to get or the health insurance benefits you're able to use."[32]

45.     A report published by the World Privacy Forum and presented at the US FTC Workshop on Informational Injury describes what medical identity theft victims may experience:

- Changes to their health care records, most often the addition of falsified information, through improper billing activity or activity by imposters. These changes can affect the healthcare a person receives if the errors are not caught and corrected.

- Significant bills for medical goods and services not sought nor received.

- Issues with insurance, co-pays, and insurance caps.

- Long-term credit problems based on problems with debt collectors reporting debt due to identity theft.

- Serious life consequences resulting from the crime; for example, victims have been

---

[29] Pam Dixon and John Emerson, *The Geography of Medical Identity Theft*, FTC.GOV (Dec. 12, 2017), http://www.worldprivacyforum.org/wp-content/uploads/2017/12/WPF_Geography_of_Medical_Identity_Theft_fs.pdf (last accessed Mar. 30, 2023).
[30] *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk…*, *supra* n.19.
[31] *What to Know About Medical Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last accessed Mar. 30, 2023).
[32] *Id.*

falsely accused of being drug users based on falsified entries to their medical files; victims have had their children removed from them due to medical activities of the imposter; victims have been denied jobs due to incorrect information placed in their health files due to the crime.

- As a result of improper and/or fraudulent medical debt reporting, victims may not qualify for mortgage or other loans and may experience other financial impacts.

- Phantom medical debt collection based on medical billing or other identity information.

- Sales of medical debt arising from identity theft can perpetuate a victim's debt collection and credit problems, through no fault of their own.[33]

46.     There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[34]

47.     It is within this context that Plaintiffs and Class members must now live with the knowledge that their PII/PHI is forever in cyberspace and was taken by and in the possession of people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**_Damages Sustained by Plaintiff and the Other Class Members_**

48.     Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs

---

[33] _See_ Pam Dixon and John Emerson, _The Geography of Medical Identity Theft_, _supra_ n.29.
[34] John W. Coffey, _Difficulties in Determining Data Breach Impacts_, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf (last accessed Mar. 30, 2023).

associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in BHG's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## CLASS ALLEGATIONS

49.     This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

50.     Plaintiffs bring this action on behalf of themselves and all members of the following Nationwide Class of similarly situated persons:

> All persons whose personally identifiable information or personal health information was compromised in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach (the "Nationwide Class").

51.     Plaintiffs alternatively bring this action on behalf of themselves and all members of the following subclass of similarly situated persons:

> All persons who have received services from or have been employed by BHG XXXIV, LLC and whose personally identifiable information or personal health information was compromised in the Data Breach by unauthorized persons, including all persons who received services from or were employed by BHG XXXIV, LLC and were sent a notice of the Data Breach (the "XXXIV Subclass").[35]

52.     Excluded from the Class is BHG XXXIV, LLC and BHG Holdings, LLC and their affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

---

[35] The Nationwide Class and the XXXIV Subclass are collectively referred to as the "Class."

53.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

54.     The members in the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. BHG reported to the United States Department of Health and Human Services Office of Civil Rights that approximately 197,507 persons' information was exposed in the Data Breach.

55.     Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

   a.   Whether BHG had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiffs' and Class Members' PII/PHI from unauthorized access and disclosure;

   b.   Whether BHG had duties not to disclose the PII/PHI of Plaintiffs and Class Members to unauthorized third parties;

   c.   Whether BHG failed to exercise reasonable care to secure and safeguard Plaintiffs' and Class Members' PII/PHI;

   d.   Whether an implied contract existed between Class members and BHG, providing that BHG would implement and maintain reasonable security measures to protect and secure Class Members' PII/PHI from unauthorized access and disclosure;

   e.   Whether BHG engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII/PHI of Plaintiffs and Class Members;

16

      f.   Whether BHG breached its duties to protect Plaintiffs' and Class members' PII/PHI; and

      g.   Whether Plaintiffs and Class members are entitled to damages and the measure of such damages and relief.

56.    BHG engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

57.    Plaintiffs' claims are typical of the claims of the Class. Plaintiffs, like all proposed members of the Class, had their PII/PHI compromised in the Data Breach. Plaintiffs and Class members were injured by the same wrongful acts, practices, and omissions committed by BHG, as described herein. Plaintiffs' claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

58.    Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs are an adequate representative of the Class in that they have no interests adverse to, or that conflict with, the Class they seek to represent. Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

59.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against BHG, so it would be impracticable for Class members

to individually seek redress from BHG's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

60.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

61.    Plaintiffs bring this claim against BHG Holdings, LLC on behalf of both the Nationwide Class and the XXXIV Subclass and bring this claim against BHG XXXIV, LLC on behalf of the XXXIV Subclass.

62.    BHG owed a duty to Plaintiffs and Class members to exercise reasonable care in safeguarding, securing, and protecting their PII/PHI in its possession, custody, or control.

63.    BHG knew or should have known the risks of collecting and storing Plaintiffs' and all other Class members' PII/PHI and the importance of maintaining secure systems. BHG knew or should have known of the many data breaches that targeted companies that stored PII/PHI in recent years.

64.    Given the nature of BHG's business, the sensitivity and value of the PII/PHI it maintains, and the resources at its disposal, BHG should have identified the vulnerabilities to their systems and prevented the Data Breach from occurring.

65.     BHG breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to it—including Plaintiffs' and Class members' PII/PHI.

66.     Plaintiffs and Class members had no ability to protect their PII/PHI that was, or remains, in BHG's possession.

67.     It was or should have been reasonably foreseeable to BHG that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class members' PII/PHI to unauthorized individuals.

68.     But for BHG's negligent conduct or breach of the above-described duties owed to Plaintiffs and Class members, their PII/PHI would not have been compromised. The PII/PHI of Plaintiffs and the Class was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding, securing, and protecting such PII/PHI by, *inter alia*, adopting, implementing, and maintaining appropriate security measures.

69.     As a result of BHG's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from

unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in BHG's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; (vii) overpayment for the services that were received without adequate data security; and (viii) other forms of injury and harm, including, but not limited to, anxiety, emotional distress, and loss of privacy.

**COUNT II**
**NEGLIGENCE PER SE**

70.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

71.     Plaintiffs bring this claim against BHG Holdings, LLC on behalf of both the Nationwide Class and the XXXIV Subclass and bring this claim against BHG XXXIV, LLC on behalf of the XXXIV Subclass.

72.     BHG's duties arise from, *inter alia*, the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C (collectively, "HIPAA Privacy and Security Rules").

73.     BHG's duties also arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as BHG, of failing to employ reasonable measures to protect and secure PII/PHI.

74.     BHG violated HIPAA Privacy and Security Rules and Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiffs' and other Class members' PII/PHI and not complying with applicable industry standards. BHG's conduct was particularly unreasonable given the nature and amount of PII/PHI it obtains and stores, and the foreseeable consequences of a data breach involving PII/PHI including, specifically, the substantial damages that would result to Plaintiffs and the other Class members.

75.     BHG's violation of HIPAA Privacy and Security Rules and Section 5 of the FTCA constitutes negligence per se.

76.     Plaintiffs and Class members are within the class of persons that HIPAA Privacy and Security Rules and Section 5 of the FTCA were intended to protect.

77.     The harm occurring as a result of the Data Breach is the type of harm HIPAA Privacy and Security Rules and Section 5 of the FTCA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiffs and Class members as a result of the Data Brach.

78.     It was or should have been reasonably foreseeable to BHG that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiffs' and Class members' PII/PHI to unauthorized individuals.

79.     The injury and harm that Plaintiffs and the other Class members suffered was the direct and proximate result of BHG's violations of harm HIPAA Privacy and Security Rules and Section 5 of the FTCA. Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in BHG's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

### COUNT III
### BREACH OF FIDUCIARY DUTY
### (On Behalf of Plaintiffs and the Nationwide Class)

80.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

81.     Plaintiffs bring this claim against BHG Holdings on behalf of both the Nationwide Class and the XXXIV Subclass.

82.     As a condition of obtaining services from BHG Holdings, Plaintiffs and Class members gave BHG Holdings their PII/PHI in confidence, believing that BHG Holdings would protect that information. Plaintiffs and Class members would not have provided BHG Holdings with this information had they known it would not be adequately protected. BHG Holdings' acceptance and storage of Plaintiffs' and Class members' PII/PHI created a fiduciary relationship between BHG Holdings and Plaintiffs and Class members. In light of

this relationship, BHG Holdings must act primarily for the benefit of its patients and employees, which includes safeguarding and protecting Plaintiffs' and Class members' PII/PHI.

83.     BHG Holdings has a fiduciary duty to act for the benefit of Plaintiffs and Class members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiffs' and Class members' PII/PHI, failing to comply with the data security guidelines set forth by HIPAA, and otherwise failing to safeguard Plaintiffs' and Class members' PII/PHI that it collected.

84.     As a direct and proximate result of BHG Holdings' breaches of its fiduciary duties, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in BHG's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

<u>**COUNT IV**</u>
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiffs and the XXXIV Subclass)**

85.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

86.     Plaintiffs bring this claim against BHG XXXIV on behalf of the XXXIV Subclass.

87.     As a condition of obtaining services from BHG XXXIV, Plaintiffs and XXXIV Subclass members gave BHG XXXIV their PII/PHI in confidence, believing that BHG XXXIV would protect that information. Plaintiffs and XXXIV Subclass members would not have provided BHG XXXIV with this information had they known it would not be adequately protected. BHG XXXIV's acceptance and storage of Plaintiffs' and XXXIV Subclass members' PII/PHI created a fiduciary relationship between BHG XXXIV and Plaintiffs and XXXIV Subclass members. In light of this relationship, BHG XXXIV must act primarily for the benefit of its patients and employees, which includes safeguarding and protecting Plaintiffs' and XXXIV Subclass members' PII/PHI.

88.     BHG XXXIV has a fiduciary duty to act for the benefit of Plaintiffs and XXXIV Subclass members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiffs' and XXXIV Subclass members' PII/PHI, failing to comply with the data security guidelines set forth by HIPAA, and otherwise failing to safeguard Plaintiffs' and XXXIV Subclass members' PII/PHI that it collected.

89.     As a direct and proximate result of BHG XXXIV's breaches of its fiduciary duties, Plaintiffs and XXXIV Subclass members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences

of the Data Breach; (v) the continued risk to their PII/PHI which remains in BHG's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

**COUNT V**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

90.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

91.     Plaintiffs bring this claim against BHG Holdings on behalf of both the Nationwide Class and the XXXIV Subclass.

92.     In connection with receiving health care services, Plaintiffs and all other Class members entered into implied contracts with BHG Holdings.

93.     Pursuant to these implied contracts, Plaintiffs and Class members paid money to BHG Holdings and provided BHG Holdings with their PII/PHI. In exchange, BHG Holdings agreed to, among other things, and Plaintiffs understood that BHG Holdings would: (1) provide health care or employment to Plaintiffs and Class member; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class members' PII/PHI; and (3) protect Plaintiffs' and Class members' PII/PHI in compliance with federal and state laws and regulations and industry standards.

94.     The protection of PII/PHI was a material term of the implied contracts between Plaintiffs and Class members, on the one hand, and BHG Holdings, on the other hand. Indeed, as set forth *supra*, BHG Holdings recognized the importance of data security and the privacy of its patients' and employees' PII/PHI in its Notice of Privacy Practices and its statements

on its website. Had Plaintiffs and Class members known that BHG Holdings would not adequately protect its patients', former patients', employees', and former employees' PII/PHI, they would not have received health care services or sought employment from BHG Holdings.

96.    Plaintiffs and Class members performed their obligations under the implied contract when they provided BHG Holdings with their PII/PHI and paid for health care services from BHG Holdings, or when they performed employment tasks for BHG Holdings' benefit.

96.    BHG Holdings breached its obligations under its implied contracts with Plaintiffs and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII/PHI, and in failing to implement and maintain security protocols and procedures to protect Plaintiffs' and Class members' PII/PHI in a manner that complies with applicable laws, regulations, and industry standards.

97.    BHG Holdings' breach of its obligations of its implied contracts with Plaintiffs and Class members directly resulted in the Data Breach and the resulting injuries to Plaintiffs and Class members.

98.    Plaintiffs and all other Class members were damaged by BHG Holdings' breach of implied contracts because: (i) they paid—directly or through their insurers—for data security protection they did not receive; (ii) they face a substantially increased and imminent risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII/PHI was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII/PHI has been breached; (v) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; (vi) lost time and money incurred to mitigate and remediate the effects

of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vii) overpayment for the services that were received without adequate data security.

### COUNT VI
### BREACH OF IMPLIED CONTRACT
#### (On Behalf of Plaintiffs and the XXXIV Subclass)

99.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

100.     Plaintiffs bring this claim against BHG XXXIV on behalf of the XXXIV Subclass.

101.     In connection with receiving health care services, Plaintiffs and all other Class members entered into implied contracts with BHG XXXIV.

102.     Pursuant to these implied contracts, Plaintiffs and XXXIV Subclass members paid money to BHG XXXIV and provided BHG XXXIV with their PII/PHI. In exchange, BHG XXXIV agreed to, among other things, and Plaintiffs understood that BHG XXXIV would: (1) provide health care or employment to Plaintiffs and Class member; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs' and XXXIV Subclass members' PII/PHI; and (3) protect Plaintiffs' and XXXIV Subclass members' PII/PHI in compliance with federal and state laws and regulations and industry standards.

103.     The protection of PII/PHI was a material term of the implied contracts between Plaintiffs and XXXIV Subclass members, on the one hand, and BHG XXXIV, on the other hand. Indeed, as set forth *supra*, BHG XXXIV recognized the importance of data security and the privacy of its patients' and employees' PII/PHI in its Notice of Privacy Practices and its statements on its website. Had Plaintiffs and XXXIV Subclass members known that BHG

27

XXXIV would not adequately protect its patients', former patients', employees', and former employees' PII/PHI, they would not have received health care services or sought employment from BHG XXXIV.

104.   Plaintiffs and Class members performed their obligations under the implied contract when they provided BHG XXXIV with their PII/PHI and paid for health care services from BHG XXXIV, or when they performed employment tasks for BHG XXXIV's benefit.

105.   BHG XXXIV breached its obligations under its implied contracts with Plaintiffs and XXXIV Subclass members in failing to implement and maintain reasonable security measures to protect and secure their PII/PHI, and in failing to implement and maintain security protocols and procedures to protect Plaintiffs' and XXXIV Subclass members' PII/PHI in a manner that complies with applicable laws, regulations, and industry standards.

106.   BHG XXXIV's breach of its obligations of its implied contracts with Plaintiffs and Class members directly resulted in the Data Breach and the resulting injuries to Plaintiffs and Class members.

107.   Plaintiffs and all other XXXIV Subclass members were damaged by BHG XXXIV's breach of implied contracts because: (i) they paid—directly or through their insurers—for data security protection they did not receive; (ii) they face a substantially increased and imminent risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII/PHI was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII/PHI has been breached; (v) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical

identity theft they face and will continue to face; and (vii) overpayment for the services that were received without adequate data security.

**COUNT VII**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

108.    Plaintiffs reallege and incorporate by reference paragraphs 1–59 as if fully set forth herein.

109.    Plaintiffs bring this claim against BHG Holdings on behalf of both the Nationwide Class and the XXXIV Subclass.

110.    This claim is pleaded in the alternative to the breach of implied contract claims.

111.    In obtaining services from, or in exchange for employment with BHG Holdings, Plaintiffs and Class members provided and entrusted their PII and PHI to BHG Holdings.

112.    Plaintiffs and Class members conferred a monetary benefit upon BHG Holdings in the form of monies paid for health care services, or in the form of employment.

113.    BHG Holdings accepted or had knowledge of the benefits conferred upon it by Plaintiffs and Class members. BHG Holdings also benefitted from the receipt of Plaintiffs' and Class members' PII/PHI, as this was used to facilitate the billing and payment services.

114.    As a result of BHG Holdings' conduct, Plaintiffs and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiffs and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

115.    BHG Holdings should not be permitted to retain the money belonging to Plaintiffs and Class members because BHG Holdings failed to adequately implement the data privacy and security procedures for itself that Plaintiffs and Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

116.    BHG Holdings should be compelled to provide for the benefit of Plaintiffs and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the XXXIV Subclass)**

117.    Plaintiffs reallege and incorporate by reference paragraphs 1–59 as if fully set forth herein.

118.    Plaintiffs bring this claim against BHG XXXIV on behalf of the XXXIV Subclass.

119.    This claim is pleaded in the alternative to the breach of implied contract claims.

120.    In obtaining services from, or in exchange for employment with BHG XXXIV, Plaintiffs and XXXIV Subclass members provided and entrusted their PII and PHI to BHG XXXIV.

121.    Plaintiffs and XXXIV Subclass members conferred a monetary benefit upon BHG XXXIV in the form of monies paid for health care services, or in the form of employment.

122.    BHG XXXIV accepted or had knowledge of the benefits conferred upon it by Plaintiffs and Class members. BHG XXXIV also benefitted from the receipt of Plaintiffs' and XXXIV Subclass members' PII/PHI, as this was used to facilitate the billing and payment services.

123.   As a result of BHG XXXIV's conduct, Plaintiffs and XXXIV Subclass members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiffs and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

124.   BHG XXXIV should not be permitted to retain the money belonging to Plaintiffs and XXXIV Subclass members because BHG XXXIV failed to adequately implement the data privacy and security procedures for itself that Plaintiffs and XXXIV Subclass members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

125.   BHG XXXIV should be compelled to provide for the benefit of Plaintiffs and XXXIV Subclass members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in their favor and against BHG Holdings and BHG XXXIV as follows:

A.   Certifying the Class as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class Counsel;

B.   Awarding Plaintiffs and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, nominal damages, restitution, and disgorgement;

C.   Awarding Plaintiffs and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiffs, on behalf of themselves and the Class, seek appropriate

injunctive relief designed to prevent BHG Holdings and BHG XXXIV  from experiencing another data breach by adopting and implementing best data security practices to safeguard PII/PHI and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D.      Awarding Plaintiffs and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.      Awarding Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.      Awarding Plaintiffs and the Class such other favorable relief as allowable under law.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: March 31, 2022                              Respectfully submitted,

_/s/ Mark K. Gray_
Mark K. Gray
**Gray & White, PLLC**
2301 River Road #300
Louisville, KY 40206
Tel: 502-210-8942
Fax: 502-618-4059
mgray@grayandwhitelaw.com

Ben Barnow*
Anthony L. Parkhill*
Riley W. Prince*
**Barnow and Associates, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312-621-2000

Fax: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com
rprince@barnowlaw.com

*Counsel for Plaintiff Carla Smith*


Josh Autry
MORGAN & MORGAN
333 W. Vine Street, Suite 1200 Lexington,
KY 40507 (859) 899-8785
jautry@forthepeople.com

John A. Yanchunis*
Ryan D. Maxey*
**MORGAN & MORGAN COMPLEX
BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor Tampa,
Florida 33602 (813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

*Counsel for Plaintiff Gary Lawson*

* *admitted pro hac vice*